**Jamin S. Soderstrom, Bar No. 261054**
jamin@soderstromlawfirm.com
**SODERSTROM LAW PC**
**3 Park Plaza, Suite 100**
**Irvine, California 92614**
Tel:   (949) 667-4700
Fax:   (949) 424-8091

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SILICON VALLEY SOFTWARE GROUP, LLC,<br><br>           Plaintiff,<br><br>v.<br><br>ROCKET FUEL, INC.,<br><br>           Defendant. | Case No. 3:17-cv-05107 (JCS)<br><br>Magistrate Judge Joseph C. Spero<br><br>**PLAINTIFF'S NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE DEFENDANT'S THIRD COUNTERCLAIM; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing:       February 2, 2018<br>Time:          9:30 a.m.<br>Courtroom:  G, 15th Floor<br>Judge:         Hon. Joseph C. Spero |

**TABLE OF CONTENTS**

**Page(s)**

NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE ............................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................................ 2

INTRODUCTION ............................................................................................................................ 2

BACKGROUND ............................................................................................................................. 3

ARGUMENT .................................................................................................................................. 5

    I.    California's anti-SLAPP statute applies to Rocket Fuel's third counterclaim for intentional interference with contract. ............................................................................. 6

    II.    SVSG satisfies its initial burden to show that Rocket Fuel's third counterclaim arises from acts taken in furtherance of SVSG's right of petition. ........................................... 7

    III.    Rocket Fuel cannot satisfy its burden to show that it has a reasonable probability of prevailing at trial on its third counterclaim for intentional interference with contract. .... 8

    IV.    SVSG is entitled to recover its costs and attorneys' fees related to this Motion. ........... 13

CONCLUSION ............................................................................................................................. 13

# TABLE OF AUTHORITIES

Page(s)

**Federal Court Cases**

*Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*,
  365 U.S. 127 (1961) .................................................................................................................. 9

*Graham-Sult v. Clainos*,
  756 F.3d 724 (9th Cir. 2013) ................................................................................................. 6, 7

*Hart v. Larson*,
  232 F. Supp. 3d 1128 (C.D. Cal. Feb. 7, 2017) ....................................................................... 10

*Kearney v. Foley & Lardner, LLP*,
  590 F.3d 638 (9th Cir. 2009) ..................................................................................................... 9

*Makaeff v. Trump University LLC*,
  736 F.3d 1180 (9th Cir. 2013) ................................................................................................. 13

*Netlist, Inc. v. Diablo Techs., Inc.*,
  2015 WL 153618 (N.D. Cal. Jan. 12, 2015) ....................................................................... 9, 13

*Nunag-Tanedo v. East Baton Rouge Parish School Board*,
  711 F.3d 1136 (9th Cir. 2013) ................................................................................................... 9

*Siegal v. Gamble*,
  2016 WL 1085787 (N.D. Cal. Mar. 21, 2016) ....................................................................... 7, 8

*Sosa v. DirecTV, Inc.*,
  437 F.3d 923 (9th Cir. 2006) ..................................................................................................... 9

*Thomas v. Fry's Elecs., Inc.*,
  400 F.3d 1206 (9th Cir. 2005) ................................................................................................... 7

*Tuck Beckstoffer Wines LLC v. Ultimate Distributors, Inc.*,
  682 F. Supp. 2d 1003 (N.D. Cal. 2010) .................................................................................... 6

*United Mine Workers v. Pennington*,
  381 U.S. 657 (1965) .................................................................................................................. 9

*United National Maintenance, Inc. v. San Diego Convention Center, Inc.*,
  766 F.3d 1002 (9th Cir. 2014) ................................................................................................. 11

**State Court Cases**

*Aronson v. Kinsella*,
  58 Cal. App. 4th 254 (1997) .................................................................................................... 10

*Briggs v. Eden Council for Hope & Opportunity*,
  19 Cal. 4th 1106 (1999) ............................................................................................................ 6

*Edwards v. Centex Real Estate Corp.*,
  53 Cal. App. 4th 15 (1997) ................................................................................................ 10, 11

*Knoell v. Petrovich*,
  76 Cal. App. 4th 164 (1999) .................................................................................................... 10

ii

PLAINTIFF'S NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE DEFENDANT'S THIRD COUNTERCLAIM AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

*Neville v. Chudacoff*,
    160 Cal. App. 4th 1255 (2008)..................................................................................... 6, 7, 10
*Olsen v. Harbison*,
    191 Cal. App. 4th 325 (2010)................................................................................................ 10
*Rubin v. Green*,
    4 Cal. 4th 1187 (1993)........................................................................................................... 10
*Scott v. Metabolife International, Inc.*,
    115 Cal. App. 4th 404 (2004)............................................................................................ 11, 12
*Silberg v. Anderson*,
    50 Cal. 3d 205 (1990)............................................................................................................... 9
*Wentland v. Wass*,
    126 Cal. App. 4th 1484 (2005).................................................................................................. 9

**State Statutory Authorities**

Cal. Civ. Code § 47....................................................................................................................... 2, 9
Cal. Civ. Code § 47(b)........................................................................................................ 1, 7, 10, 13
Cal. Civ. Proc. Code § 425.16........................................................................................... 2, 6, 7, 13

iii

PLAINTIFF'S NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE DEFENDANT'S THIRD
COUNTERCLAIM AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

# NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE

PLEASE TAKE NOTICE that on February 2, 2018 at 9:30 a.m., or as soon thereafter as the matter may be heard by the Honorable Joseph C. Spero in Department G-15th Floor of the United States District Court for the Northern District of California, Plaintiff Silicon Valley Software Group, LLC ("Plaintiff" or "SVSG") will and hereby does move the Court for an order striking the third counterclaim for intentional interference with contract filed by Defendant Rocket Fuel, Inc. ("Defendant" or "Rocket Fuel") in this action. *See* Dkt. 26. This Special Motion to Strike is brought pursuant to California's Anti-SLAPP Statute, Code of Civil Procedure section 425.16, and California's Litigation Privilege Statute, Civil Code section 47(b), because the communications and acts about which Rocket Fuel complains and on which it bases its third counterclaim constitute protected activities by SVSG that cannot give rise to tort liability.

This Special Motion to Strike is based on this Notice of Motion and Special Motion to Strike; Plaintiff's Memorandum of Points and Authorities; the Declarations of Eric Leppo and Jamin S. Soderstrom and all exhibits thereto; all document's in the Court's file; and such other arguments as may be presented to the Court.

Dated: December 29, 2017          SODERSTROM LAW PC

By: /s/ Jamin S. Soderstrom
*Counsel for Silicon Valley Software Group, LLC*
E-mail: jamin@soderstromlawfirm.com



1

PLAINTIFF'S NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE DEFENDANT'S THIRD
COUNTERCLAIM AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Defendant Rocket Fuel, Inc.'s third counterclaim for intentional interference with contract is precisely the type of common law tort claim that is subject to a special motion to strike under California's anti-SLAPP statute, Cal. Code Civ. Proc. § 425.16. In its third counterclaim, Rocket Fuel threatens Plaintiff Silicon Valley Software Group, LLC ("SVSG") with tort liability based on SVSG's pre-litigation communications and acts that raised and tried to settle the very same legal disputes now at issue in this litigation. SVSG's relevant communications and acts (most of which involved the parties' respective counsel) were in furtherance of SVSG's right of petition, and as such they constitute protected activities under the anti-SLAPP statute and California's related litigation privilege. Cal. Civ. Code § 47. Even if SVSG's communications and acts were potentially improper (they were not), SVSG would nevertheless be immune from any liability based on such communications and acts.

In Rocket Fuel's misguided view, to avoid tort liability SVSG was required to (i) remain silent when third party Lorem Labs Ltd. refused to pay SVSG for months of engineering work, (ii) continue working for free to avoid disrupting Rocket Fuel's separate contract with Lorem Labs Ltd., and (iii) accept Rocket Fuel's assertions of ownership over SVSG's source code based on assignment agreements that were secured from SVSG's engineering team without SVSG's knowledge or authorization. Essentially, Rocket Fuel alleges that SVSG's act of raising legal disputes is itself a tortious acts that can give rise to liability if such act caused Rocket Fuel to incur costs and expenses it would not have incurred had SVSG simply remained silent. Rocket Fuel is wrong.

The law does not require SVSG to remain silent and refrain from taking action to protect its rights when legal disputes arise. Nor does the law require SVSG to run immediately to the courthouse without first trying to negotiate a private settlement among the relevant parties. That is exactly what SVSG did in late 2016 and 2017.

Because SVSG's pre-litigation communications and acts are protected activities under the anti-SLAPP and litigation privilege statutes, and because SVSG is immune from liability based on its protected activities, Rocket Fuel has no probability of prevailing on the merits of its third counterclaim.

2

PLAINTIFF'S NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE DEFENDANT'S THIRD COUNTERCLAIM AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

1  The Court should therefore grant this Motion, strike Rocket Fuel's third counterclaim for intentional
2  interference with contract under the anti-SLAPP statute, and award SVSG its costs and fees.

## BACKGROUND

In late 2016 and 2017, SVSG raised several legal disputes with Lorem Labs and Rocket Fuel concerning payment for and ownership of the source code and related work product created by SVSG's Belarus-based engineering team between August 1, 2017 and January 27, 2017. *See, e.g.,* Complaint ¶¶ 7-10 [Dkt. 1]; First Amended Complaint ("FAC") ¶¶ 11-14 [Dkt. 17]; Counterclaims ¶¶ 2, 7-12, 30-36 [Dkt. 26]. SVSG raised the legal disputes over the course of several months through written and oral communications that were exchanged primarily through the parties' respective counsel. Counterclaims ¶¶ 30-36; Leppo Decl. ¶¶ 3-4, 6-7; Soderstrom Decl. ¶ 2.

SVSG's communications alleged that Lorem Labs failed to comply with its contractual payment obligations owed to SVSG, and that Rocket Fuel did not own any of the intellectual property rights attached to SVSG's engineering team's work product. Leppo Decl. ¶ 4, Ex. 2; Soderstrom Decl. ¶ 2; FAC ¶¶ 11-14; Counterclaims ¶¶ 30-36. SVSG originally raised these legal disputes through its general counsel Joy Nair and its chief operating officer Eric Leppo. Counterclaims ¶¶ 30-36; Leppo Decl. ¶ 4, Ex. 2. When the parties' settlement negotiations in late 2016 and early 2017 did not resolve SVSG's legal claims—i.e., when Lorem Labs refused to pay SVSG under their contract and when Rocket Fuel claimed ownership over SVSG's intellectual property and started paying to have SVSG's engineering team continue developing SVSG's source code without SVSG's authorization—SVSG and Rocket Fuel both engaged outside litigation counsel to continue the negotiations. Leppo Decl. ¶¶ 6-7; Soderstrom Decl. ¶ 2. Lorem Labs had involved its outside counsel in negotiating the disputes beginning in late 2016. Leppo Decl. ¶¶ 3, 6; Soderstrom Decl. ¶ 2.

The parties' settlement negotiations spanned more than eight months, during which time they traded numerous written and oral communications related to SVSG's legal claims and Rocket Fuel's and Lorem Labs' potential defenses. Leppo Decl. ¶¶ 3-8 Soderstrom Decl. ¶¶ 2-3. The negotiations culminated in a private mediation among SVSG, *Rocket Fuel, and Lorem Labs on August* 31, 2017 (first proposed in May 2017), which was presided over by retired judge James Warren. *See* Leppo Decl. ¶¶

3

PLAINTIFF'S NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE DEFENDANT'S THIRD
COUNTERCLAIM AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

7-8; Soderstrom Decl. ¶ 3; Joint Rule 26(f) Report, Case Management Statement & [Proposed] Order ("Joint CMS") [Dkt. 20 at 3, 12]. When mediation failed to resolve the parties' disputes, SVSG filed this action against Rocket Fuel on September 1, 2017. *See* Complaint.

SVSG reasonably believed from when it first raised the legal disputes that formal litigation or arbitration was likely if the disputes could not be resolved amicably. Leppo Decl. ¶ 7. By involving their respective counsel and invoking the settlement and mediation privileges concerning many of their communications, all of the relevant parties contemplated that litigation or arbitration was reasonably likely. *See id.*; Soderstrom Decl. ¶¶ 2-4; Joint CMS at 5.

SVSG has considered but not yet filed any litigation or arbitration against Lorem Labs, which is a small company based in the Caribbean whose key director lives in Europe. Leppo Decl. ¶ 6; Soderstrom Decl. ¶ 4. SVSG has also considered litigation or arbitration against Sivintech LLC, the Belarusian company that SVSG paid to form in 2015, that employed SVSG's engineering team, and that ultimately breached its contractual obligations owed to SVSG in January 2017 when Rocket Fuel convinced it to keep working on SVSG's source code over SVSG's objections. Leppo Decl. ¶ 5; Soderstrom Decl. ¶ 4. SVSG engaged Belarusian counsel in February 2017 to raise legal disputes directly with Sivintech, but it has not filed any action against Sivintech or Belarus-based engineers. Leppo Decl. ¶¶ 5, 8 & Ex. 3.

Rocket Fuel agrees that SVSG's allegations and claims being made in this action concern the very same legal disputes that the parties have been trying to resolve since late 2016. Counterclaims ¶¶ 2, 6-16; Joint CMS at 2-3. Rocket Fuel's first two counterclaims seeking declaratory relief are based on the same copyright and trade secrets ownership disputes that SVSG raised with Rocket Fuel beginning in January 2017. *Compare* Counterclaims ¶¶ 66-83 *with* Complaint ¶¶ 40-52 *and* FAC ¶¶ 22-38.

In support of its third counterclaim for intentional interference with contract, Rocket Fuel identifies only two activities that give rise to SVSG's alleged tort liability: (i) communications SVSG made in late 2016 and 2017 related to payment and ownership disputes with Lorem Labs and Rocket Fuel, Counterclaims ¶¶ 2-4, 6, 10-12, 30-36, 51, 62-63; and (ii) SVSG's act of filing of this action on September 1, 2017 (one day after mediation) while Rocket Fuel's acquisition by Sizmek was still

4

PLAINTIFF'S NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE DEFENDANT'S THIRD COUNTERCLAIM AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

pending, *id.* ¶¶ 5, 12, 14.

Rocket Fuel admits that SVSG's communications beginning in late 2016 were raising legal "disputes" and that SVSG was trying to "settle" such disputes with Lorem Labs and Rocket Fuel without resorting to formal litigation. *Id.* ¶¶ 2, 4, 6-16, 30-36; Leppo Decl. ¶¶ 3-6; Soderstrom Decl. ¶¶ 2-3. Rocket Fuel simply believes it should prevail on SVSG's claims, and that SVSG therefore should not have raised any legal disputes in the first place. There is no part of Rocket Fuel's Counterclaims that does not arise out of the same legal disputes SVSG first raised in late 2016 and early 2017 concerning payment for and ownership of SVSG's work product and intellectual property rights.

## ARGUMENT

SVSG's pre-litigation communications and acts that raised and tried to settle legal disputes with Rocket Fuel and Lorem Labs in late 2016 and 2017 were in furtherance of SVSG's right to petition a court or an arbitrator for the redress of grievances. Accordingly, even if SVSG's pre-litigation communications and acts could reasonably be construed as being improper (they could not), they are protected activities under the anti-SLAPP statute and SVSG is immune from liability based on such communications and acts under the litigation privilege.

Rocket Fuel's third counterclaim simply alleges that SVSG's pre-litigation communications and acts caused Rocket Fuel to incur costs that it would not have otherwise incurred had SVSG remained silent and not pushed for settlement or filed this action.[1] In Rocket Fuel's view, SVSG demanding payment from Lorem Labs, raising an intellectual property ownership dispute with Rocket Fuel, and arguing that the assignment agreements Rocket Fuel secured from SVSG's engineering team are invalid constitutes intentional interference with Rocket Fuel's separate contract with Lorem Labs and with the assignment agreements themselves. The only way SVSG could have avoided tort liability, according to

---

[1] Even while complaining about its alleged replacement costs, Rocket Fuel avoids mentioning in its Counterclaims when or why it decided to stop paying SVSG's poached engineering team to continue developing SVSG's source code and to seek the help of replacement engineers. It appears that sometime after SVSG raised its legal disputes with Rocket Fuel, Lorem Labs and Rocket Fuel had a falling out concerning indemnity obligations or some other contractual issues, and that Rocket Fuel decided it was not worth continuing to work with the same engineering team at the heart of SVSG's claims. Rocket Fuel's eventual decision to stop working with SVSG's poached engineering team does not create potential tort liability for SVSG; at best, it is a weak attempt by Rocket Fuel to try to limit its own tort liability and mitigate SVSG's damages.

5

PLAINTIFF'S NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE DEFENDANT'S THIRD COUNTERCLAIM AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

Rocket Fuel, was to have remained silent, continued to provide unpaid engineering services, and accepted the unauthorized assignment agreements as valid and enforceable.

The law does not force SVSG to choose between silence and consent, on the one hand, or potential tort liability on the other. Rather, it expressly protects SVSG's right to raise and try to settle legal disputes in good faith, and to formally seek redress for its grievances in court or arbitration if its pre-litigation efforts prove unsuccessful. The Ninth Circuit and numerous district courts have rejected causes of action for intentional interference with contract and similar torts based on a party's pre-litigation communications and acts taken in furtherance of its right to pursue formal legal action. This Court should do the same and strike Rocket Fuel's third counterclaim.

## I. California's anti-SLAPP statute applies to Rocket Fuel's third counterclaim for intentional interference with contract.

California's anti-SLAPP statute lets SVSG file a special motion to strike any "cause of action . . . arising from any act . . . in furtherance of [SVSG's] right of petition . . ." Cal. Code Civ. Proc. § 425.16(b)(1). Rocket Fuel's third counterclaim for intentional interference with contract is based on SVSG's pre-litigation communications and acts taken in furtherance of its right of petition. Cal. Code Civ. Proc. § 425.16(e)(2) (covering "any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body"). "[C]ommunications preparatory to or in anticipation of the bringing of an action or other official proceeding . . . are entitled to the benefits of section 425.16." *Neville v. Chudacoff*, 160 Cal. App. 4th 1255, 1268 (2008) (quoting *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal. 4th 1106, 1115 (1999)).

SVSG's pre-litigation communications and acts are covered by the anti-SLAPP statute so long as they "relate[] to the substantive issues in the litigation and [are] directed to persons having some interest in the litigation." *Id.* at 1266; *see Graham-Sult v. Clainos*, 756 F.3d 724, 738 (9th Cir. 2013) ("[C]onduct can be protected by the anti-SLAPP statute even though no issue is yet under consideration by a judicial body at the time the defendant engages in the conduct."); *Tuck Beckstoffer Wines LLC v. Ultimate Distributors, Inc.*, 682 F. Supp. 2d 1003, 1008-09 (N.D. Cal. 2010) (pre-litigation conduct is covered by California's anti-SLAPP statute). Rocket Fuel admits that SVSG's communications and acts

6

about which Rocket Fuel is now complaining were all related to the substantive issues now involved in this action, and that the relevant parties (SVSG, Rocket Fuel, Lorem Labs, and Sivintech) all have some interest in this action. *See, e.g.*, Counterclaims ¶¶ 1-16, 24-36.

An anti-SLAPP motion under Section 425.16 is available in federal court. *Graham-Sult*, 756 F.3d at 735 (citing *Thomas v. Fry's Elecs., Inc.*, 400 F.3d 1206, 1206-07 (9th Cir. 2005) (per curiam). California courts and courts within the Ninth Circuit construe Code of Civil Procedure section 425.16 (the anti-SLAPP statute) and California Civil Code section 47(b) (the litigation privilege) broadly in favor of protecting parties from derivative liability based on their pre-litigation conduct. *See Siegal v. Gamble*, 2016 WL 1085787, at *9-15 (N.D. Cal. Mar. 21, 2016) (granting anti-SLAPP motion for pre-litigation acts that are immune from liability under Section 47(b)); *Neville*, 160 Cal. App. 4th at 1266 (to be privileged under Section 47(b), a statement need only be "reasonably relevant" to pending or contemplated litigation).

Rocket Fuel's third counterclaim for intentional interference with contract is precisely the type of cause of action covered by the anti-SLAPP statute. *See Feldman v. 1100 Park Lane Associates*, 160 Cal. App. 4th 1467, 1486 (2008) (noting numerous causes of action, including allegations of "intentional inducement of breach of contract," "intentional interference with prospective economic advantage," and "interference with contract," are covered by the litigation privilege and subject to a special motion to strike) (citing cases).

**II.   SVSG satisfies its initial burden to show that Rocket Fuel's third counterclaim arises from acts taken in furtherance of SVSG's right of petition.**

In determining whether an action must be stricken under the anti-SLAPP statute, a court's first step is to decide whether the moving party has made a prima facie showing that the relevant cause of action arises from conduct in furtherance of the exercise of the right of petition or free speech. *See Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc. ("GLAAD")*, 842 F.3d 414, 421-22 (9th Cir. 2014). SVSG easily satisfies its initial burden. Rocket Fuel identifies only two categories of acts that give rise to SVSG's alleged tort liability for intentional interference with contract: (1) SVSG's pre-litigation communications and related acts raising legal "disputes" and attempting to

7

PLAINTIFF'S NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE DEFENDANT'S THIRD COUNTERCLAIM AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

"settle" SVSG's claims against Rocket Fuel and Lorem Labs, and (2) SVSG's act of filing this action. Counterclaims ¶¶ 2, 4, 6-16, 30-36.

There is no reasonable dispute that SVSG's pre-litigation communications made to Lorem Labs and Rocket Fuel were in furtherance of SVSG's right of petition. Rocket Fuel itself describes SVSG's communications in late 2016 and throughout 2017 as raising "disputes" concerning payment for and ownership of "Disputed IP." *Id.* Moreover, Rocket Fuel's Counterclaims and the parties' communications cited by Rocket Fuel show that all of SVSG's relevant acts involved identifying legal disputes, initiating settlement negotiations, and attempting to further its contractual and intellectual property ownership interests in preparation for, but without immediately resorting to, formal litigation or arbitration. Leppo Decl. ¶¶ 3-8; Soderstrom Decl. ¶¶ 2-3; Joint CMS at 2-3, 12. Most of the relevant communications also involved the parties' respective counsel from the start—including outside litigation counsel—which is further evidence that the parties were contemplating potential litigation or arbitration if an amicable resolution could not be reached. Leppo Decl. ¶¶ 3-4, 6-7; Soderstrom Decl. ¶¶ 2-3.

Because SVSG's communications and related acts taken between late 2016 and the filing of this action on September 1, 2017 were all in furtherance of SVSG's right to petition for the redress of grievances, and because the same disputes raised in such communications are now at issue in this lawsuit, SVSG's pre-litigation communications and acts constitute protected activities under California's anti-SLAPP statute. SVSG has satisfied its initial burden.

**III. Rocket Fuel cannot satisfy its burden to show that it has a reasonable probability of prevailing at trial on its third counterclaim for intentional interference with contract.**

If the moving party satisfies its initial burden of showing that the relevant cause of action arises from a protected activity, the burden then shifts to the responding party to establish a probability of prevailing at trial. *GLAAD*, 742 F.3d at 422. The responding party must "establish, by competent evidence, a probability that it will prevail on its [claims]." *Id.*

///

///

8

PLAINTIFF'S NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE DEFENDANT'S THIRD COUNTERCLAIM AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

Rocket Fuel has no possibility of prevailing at trial on the merits of its third counterclaim. Rocket Fuel's argument is that, because it believes SVSG should not prevail on the claims SVSG is making against Rocket Fuel in this action, SVSG should be tortiously liable simply for raising these legal disputes in the first place and causing Rocket Fuel to incur costs and take certain actions in its own defense.[2] Rocket Fuel's position is in direct conflict with the broad litigation privilege set forth in California Civil Code section 47.

> Section 47 provides absolute immunity from claims based upon "publications" made as part of a judicial proceeding. "The 'principal purpose' of the litigation 'is to afford litigants and witnesses the utmost freedom of access to the courts without fear of being harassed subsequently by derivative' claims." *Wentland v. Wass*, 126 Cal. App. 4th 1484, 1492 (2005) (quoting *Silberg v. Anderson*, 50 Cal. 3d 205, 213 (1990)) (litigation privilege applies to breach of contract claim if such application furthers the policies underlying the privilege); *see also Feldman v. 1100 Park Lane Associates*, 160 Cal. App. 4th 1467, 1486 (2008) (section 47 has been held to apply to claims of interference with contract and unfair competition) (citing cases). The litigation privilege has been interpreted broadly by the California courts, and applies to any communication made in connection with judicial proceedings. *Feldman v. 1100 Park Lane Associates*, 160 Cal. App. 4th 1467, 1485 (2008).

*Netlist, Inc. v. Diablo Techs., Inc.*, 2015 WL 153618, at *5 (N.D. Cal. Jan. 12, 2015).[3]

---

[2] Rocket Fuel complaints that it has suffered damages caused by SVSG's pre-litigation communications and acts. But Rocket Fuel's payments to its counsel for engaging in pre-litigation settlement negotiations with SVSG, and Rocket Fuel's costs related to its decision to stop working with the engineering team it poached from SVSG, are not tort damages. At best, they are common legal expenses and a belated attempt to mitigate *SVSG's damages*. In fact, Rocket Fuel's complaints about incurring "replacement" costs when it eventually hired new engineers help to prove SVSG's claim that Rocket Fuel misappropriated SVSG's trade secret information in an effort to avoid those same replacement costs it now tries to construe as damages. *See* Counterclaims ¶¶ 53, 65, 93-94.

[3] The *Noerr-Pennington* doctrine also protects a party's ability to act in furtherance of its right to petition for the redress of grievances. *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *United Mine Workers v. Pennington*, 381 U.S. 657 (1965); *Sosa v. DirecTV, Inc.*, 437 F.3d 923, 934-35 (9th Cir. 2006). Under this doctrine, persons who petition the government for redress are generally immune from liability for their petitioning conduct. *Nunag-Tanedo v. East Baton Rouge Parish Sch. Bd.*, 711 F.3d 1136, 1138-39 (9th Cir. 2013). The immunity provided under the doctrine extends to conduct incidental to, and the "breathing space" necessary for, petitioning activities, e.g.,

9

PLAINTIFF'S NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE DEFENDANT'S THIRD COUNTERCLAIM AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

Under California Civil Code section 47(b), SVSG's pre-litigation communications and related acts concerning the legal disputes among SVSG, Rocket Fuel, and Lorem Labs are immune from tort liability. Cal. Civ. Code § 47(b); *Rubin v. Green*, 4 Cal. 4th 1187, 1195 (1993) (noting there are "few communicative acts more clearly within the scope of the privilege than . . . meeting and discussing . . . the merits of" legal disputes); *see also Edwards v. Centex Real Estate Corp.*, 53 Cal. App. 4th 15, 36 (1997) (privileged communications include those with "some relation to an imminent lawsuit or judicial proceeding which is actually contemplated seriously and in good faith to resolve a dispute"). As the parties' relevant communications show, counsel for all sides were involved from the very beginning in raising and negotiating the legal disputes, and formal mediation with a retired judge was first proposed in May 2017 and eventually took place in August 2017. Leppo Decl. ¶¶ 7-8; Soderstrom Decl. ¶ 3. SVSG's communications and acts show that they were made in good faith to resolve multiple related disputes, and that SVSG was seriously contemplating the potential for litigation or arbitration if the disputes could not be resolved privately among the parties. Leppo Decl. ¶ 7; Soderstrom Decl. ¶¶ 2-3.

Rocket Fuel may point to *Edwards* or similar decisions in an attempt to limit the litigation privilege's application to SVSG because SVSG did not race immediately to the courthouse in late 2016 or early 2017, and because some of SVSG's early communications did not expressly threaten a formal lawsuit or arbitration. 53 Cal. App. 4th at 24, 36. Any such attempt should be rejected. In *Edwards*, homeowners sought repair work for foundation cracks, and the defendants provided a release agreement in connection with the repair work. *Id.* at 24-26. Years later, the homeowners filed a lawsuit which, in part, alleged fraudulent inducement concerning the release. *Id.* The lower court found that the communications related to obtaining a release from the homeowners were not absolutely privileged because there was no indication that any of the parties had actually contemplated litigation when the repairs had been requested and when the release had been offered and signed, and the appellate court affirmed. *Id.* at 24-26, 37-40; *Aronson v. Kinsella*, 58 Cal. App. 4th 254, 267-68 (1997); *Neville*, 160 Cal. App. 4th at 1268-69; *Knoell v. Petrovich*, 76 Cal. App. 4th 164, 170-71 (1999); *Feldman*, 160 Cal.

---

activities preliminary to the formal filing of litigation, *Sosa*, 437 F.3d at 934-35; communications between private parties sufficiently related to petitioning activity; and even pre-litigation information, *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 645-46 (9th Cir. 2009).



10

PLAINTIFF'S NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE DEFENDANT'S THIRD COUNTERCLAIM AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

App. 4th at 1489 & n.6; *Olsen v. Harbison*, 191 Cal. App. 4th 325, 333-35 (2010); *Hart v. Larson*, 232 F. Supp. 3d 1128, 1137-40 (C.D. Cal. Feb. 7, 2017).

Here, unlike *Edwards*, the existence of formal legal disputes concerning contractual obligations, ownership rights, and interference with SVSG's engineering team in Belarus were clear from the very start, and the parties were trying to settle such disputes privately through their respective counsel. Leppo Decl. ¶¶ 3-8; Soderstrom Decl. ¶ 2. All of the parties contemplated the possibility of formal litigation and/or arbitration, and the prospect of a formal mediation was raised early in the negotiations when settlement offers had been made and rejected. Leppo Decl. ¶ 7; Soderstrom Decl. ¶ 3. There is a vast difference between a common release for repair work being offered to a homeowner years before a lawsuit was ever filed, and formal settlement negotiations exchanged among counsel for sophisticated companies in the months leading up to the filing of this action. Here, SVSG's relevant communications clearly raised legal disputes and the parties reasonably anticipated potential litigation or arbitration if such disputes could not be settled amicably.

Rocket Fuel also alleges that SVSG started wrongfully "withholding services" in January 2017, vaguely suggesting that SVSG's act of stopping its engineering work when (as Rocket Fuel itself acknowledges) Lorem Labs refused to pay over $139,000 in invoices constituted tortious conduct by SVSG *against Rocket Fuel*. Counterclaims ¶¶ 7, 51. First, Rocket Fuel's passing reference to "withholding services" is tangential to its core allegations that are based on SVSG's settlement communications and the act of filing this action while Rocket Fuel's corporate transaction was still pending. *See Scott v. Metabolife Int'l, Inc.*, 115 Cal. App. 4th 404, 413-14 (2004) (noting courts must hone in on the "principal thrust or gravamen" of the relevant cause of action for purposes of an anti-SLAPP special motion to strike) (citation omitted). Moreover, to prevail on such a theory of liability, Rocket Fuel would have to prove that (1) SVSG breached its contract with Lorem Labs by failing to continue to provide engineering services even though Lorem Labs refused to pay for such services, and (2) SVSG's breach was done with the design of disrupting Lorem Labs' separate "consulting agreement" with Rocket Fuel (the terms of which were never shared with SVSG) or the assignment agreements that SVSG has always contended were invalid since it learned of them in early 2017. Leppo

11

Decl. ¶¶ 5-6; *see, e.g.*, *United Nat'l Maintenance, Inc. v. San Diego Convention Center, Inc.*, 766 F.3d 1002, 1006 (9th Cir. 2014) (noting California law requires that the intentional acts be "designed" to induce a breach or disruption).

Even if such a theory of liability was plausible (it is not), Rocket Fuel could never meet its burden of proof and prevail at trial. There is no requirement in SVSG's contract with Lorem Labs that SVSG work for free if it is not paid, and SVSG was entitled to terminate its contract with Lorem Labs upon 30 days' written notice or if Lorem Labs failed to cure a material breach. Leppo Decl. ¶ 2, Ex. 1 (copy of contract between SVSG and Lorem Labs). Rocket Fuel even admits that SVSG gave Rocket Fuel the chance to step in and provide payment so SVSG could avoid reassigning its engineering team to other projects, and Rocket Fuel declined to step in (instead, Rocket Fuel decided to pay SVSG's engineering team to keep working on the source code over SVSG's objections). Counterclaims ¶¶ 7, 14; Leppo Decl. ¶ 5. In any event, SVSG's decision to stop providing engineering services did not actually cause Rocket Fuel to suffer any damages,[4] and SVSG announcing that it would be compelled to stop providing services if it was not paid was a protected activity in furtherance of SVSG's right of petition.

Rocket Fuel's chances of prevailing on the merits of its third counterclaim are zero. The principal thrust of its allegations of tortious conduct are based on SVSG's privileged, pre-litigation communications and acts that led directly to this action once the parties' private settlement negotiations failed. Even if its passing reference to "withholding services" under a separate contract could be construed as a nonprotected act taken by SVSG that could give rise to potential tort liability (it cannot), such allegations cannot save Rocket Fuel's third counterclaim. *Scott*, 115 Cal. App. 4th at 414-15 ("[W]hen allegations of nonprotected activity are incidental or collateral to a plaintiff's claim challenging primarily the exercise of the rights of free speech or petition, they may be disregarded in determining whether the cause of action arises from protected activity.").

///

---

[4] One of the primary reasons that SVSG filed this action is that Rocket Fuel poached SVSG's engineering team to ensure that no services were actually withheld or disrupted (i.e., so the same engineers would keep working with Rocket Fuel notwithstanding SVSG's contractual rights). By continuing to work with SVSG's engineering team over SVSG's objections, Rocket Fuel made sure that there was no disruption of services that could give rise to damages had a tort actually been committed.

12

PLAINTIFF'S NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE DEFENDANT'S THIRD COUNTERCLAIM AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

1  Rocket Fuel cannot meet its burden of showing a reasonable probability of prevailing on the
2  merits of its third counterclaim.

3  **IV.   SVSG is entitled to recover its costs and attorneys' fees related to this Motion.**

4  Under Section 425.16(c)(1) of the anti-SLAPP statute, SVSG is entitled to recover its attorneys'
5  fees and costs upon prevailing on its special motion to strike. Cal. Code Civ. Proc. § 425.16(c)(1); *see*
6  *Makaeff v. Trump University LLC*, 736 F.3d 1180, 1181 (9th Cir. 2013). Therefore, if the Court grants
7  this Motion, SVSG requests that it set a briefing schedule to determine the amount of SVSG's
8  recoverable attorney's fees and costs. *See Netlist, Inc.*, 2015 WL 153618, at *6.

9  **CONCLUSION**

10  The Court should reject Rocket Fuel's argument that SVSG's pre-litigation communications and
11  acts taken in furtherance of its right of petition can give rise to potential tort liability for intentional
12  interference with contract. Counsel for all parties have been involved at every stage of the process, and
13  litigation, arbitration, and mediation were all contemplated from the very beginning of the legal disputes
14  and settlement negotiations. SVSG's pre-litigation conduct (which eventually led to the filing of this
15  action) is at the core of what California's anti-SLAPP statute and litigation privilege are intended to
16  protect, i.e., acts taken in furtherance of its right to petition for the redress of grievances. Under
17  California Code of Civil Procedure section 425.16 and California Civil Code section 47(b), even if
18  SVSG's pre-litigation conduct could be construed as wrongful (it cannot), SVSG is immune from any
19  liability based on such conduct.

20  SVSG has satisfied its initial burden of proof under the anti-SLAPP statute, and Rocket Fuel
21  cannot meet its burden to show it has a reasonable probability of prevailing on the merits of its claim
22  for intentional interference with contract. The Court should therefore grant this Motion, strike Rocket
23  Fuel's third counterclaim, and award SVSG its costs and fees.

24  Dated: December 29, 2017           SODERSTROM LAW PC
25                                    By: */s/ Jamin S. Soderstrom*
26                                    *Counsel for Silicon Valley Software Group, LLC*
27                                    E-mail: jamin@soderstromlawfirm.com
28

13

PLAINTIFF'S NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE DEFENDANT'S THIRD
COUNTERCLAIM AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 29th day of December, 2017, I caused a copy of the PLAINTIFF'S NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE DEFENDANT'S THIRD COUNTERCLAIM; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF, ALONG WITH SUPPORTING DOCUMENTS, to be served by electronic mail via ECF to the party below through its counsel.

Patrick E. Premo, Esq.
Fenwick & West, LLP
Silicon Valley Center
801 California Street
Mountain View, CA 94041
ppremo@fenwick.com
*Counsel for Defendants*

Dated: December 29, 2017

SODERSTROM LAW PC

By: /s/ Jamin S. Soderstrom

*Counsel for Silicon Valley Software Group, LLC*

E-mail: jamin@soderstromlawfirm.com

