**Jamin S. Soderstrom, Bar No. 261054**
**jamin@soderstromlawfirm.com**
**SODERSTROM LAW PC**
**3 Park Plaza, Suite 100**
**Irvine, California 92614**
**Tel: (949) 667-4700**
**Fax: (949) 424-8091**

***Counsel for Plaintiff***

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **SILICON VALLEY SOFTWARE GROUP, LLC,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**ROCKET FUEL, INC.,**<br><br>**Defendant.** | **Case No. 3:17-cv-05107-JCS**<br><br>**SECOND AMENDED COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Silicon Valley Software Group, LLC ("SVSG") files this action against Rocket Fuel, Inc. ("Rocket Fuel") for willful copyright infringement, misappropriation of trade secrets, and tortious interference, and hereby alleges as follows:

**JURISDICTION & VENUE**

1. This Court has original jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338 because it is being brought under the Copyright Act, 17 U.S.C. § 101 *et seq.* ("Copyright Act"), and the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.* ("DTSA"). This Court is also empowered to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

2. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the state law claims pleaded in this action because the state law claims and federal claims are so closely related that they form part of the same case or controversy.

3. This Court has personal jurisdiction over Rocket Fuel because (a) a substantial portion of Rocket Fuel's wrongful acts alleged in this action took place in California, (b) Rocket Fuel maintains its principal place of business in California, and (c) the exercise of jurisdiction by this Court is permissible under traditional notions of fair play and substantial justice.

4. Venue is proper in this District under 28 U.S.C. § 1391 because Rocket Fuel resides in this district and a substantial part of the events and omissions that give rise to this action occurred in this District.

**INTRADISTRICT ASSIGNMENT**

5. A substantial part of the events or omissions which give rise to the claims occurred in the counties within the San Francisco and Oakland Divisions, and therefore this action is properly assigned to the San Francisco or Oakland Division. *See* N.D. Cal. Local Rule 3-2(c)-(d). SVSG's headquarters are in San Francisco County, and Rocket Fuel's headquarters are in San Mateo County.

**PARTIES**

6. Plaintiff Silicon Valley Software Group, LLC is a California limited liability company with its principal place of business in San Francisco, California.

7. Defendant Rocket Fuel, Inc. is a Delaware corporation with its principal place of business in Redwood City, California.

## ROCKET FUEL'S WRONGFUL CONDUCT

### Factual Background

8. This action involves Rocket Fuel wrongfully claiming ownership of, creating derivative works based on, and eventually selling copyrighted source code and related works owned by SVSG. It also involves Rocket Fuel interfering with the contracts SVSG had with its software engineering team and, ultimately, poaching SVSG's engineering team so they could continue to work on SVSG's source code without SVSG's involvement or consent.

9. SVSG employed as independent contractors a team of software engineers to work in the Minsk, Belarus office that SVSG established in 2013. Among other assignments, from August 2014 to January 2017 SVSG assigned its engineering team in Belarus to perform work related to a software development project run by Rocket Fuel. SVSG secured with written contracts all intellectual property rights and interests in the source code and other work product created by its engineering team. After securing from its engineers all intellectual property rights in the work SVSG was paying for, SVSG never signed (or authorized any of its engineers to sign) any agreement that assigned or transferred any of SVSG's rights and interests in the engineering team's work product to Rocket Fuel or any other party.

10. SVSG never had a written contract with Rocket Fuel. SVSG's work was provided to Rocket Fuel through an intermediary company, Lorem Labs Ltd. ("Lorem Labs"). SVSG never assigned or transferred any of its intellectual property rights or interests in its source code and other work product to Lorem Labs.

11. In January 2017, after SVSG had provided nearly two-and-a-half years of full-time software engineering totaling more than 37,000 hours of development work, SVSG informed Rocket Fuel of a payment dispute that had arisen between SVSG and Lorem Labs for the work SVSG was performing related to the project. SVSG told Rocket Fuel that it would stop providing engineering services if it was not paid. SVSG also reminded Rocket Fuel that SVSG owned all intellectual property rights and interests in its engineering team's work product. Shortly thereafter, because SVSG had not been paid for its work for several months, SVSG told Rocket Fuel that it was going to reassign its Belarus engineering team to other projects.

SODERSTROM LAW

12. Rocket Fuel then caused SVSG's engineers to stop working with SVSG but continue to develop SVSG's source code for Rocket Fuel's project. Rocket Fuel's actions caused the engineers to breach their contracts with SVSG and caused SVSG to lose one of its premier software engineering teams. Rocket Fuel's actions also forced SVSG to expend significant resources to create a new engineering team of comparable quality to work on SVSG's other projects.

13. After raising the dispute in January 2017, SVSG learned that Rocket Fuel had, without SVSG's knowledge or authorization, been obtaining directly from several members of SVSG's engineering team assigned to work on the Rocket Fuel project one-page form assignment agreements that purported to assign and transfer to Rocket Fuel the same intellectual property rights and interests that SVSG had already secured. SVSG also learned that Rocket Fuel had been claiming that it owned all of SVSG's intellectual property rights; had been using SVSG's intellectual property rights to secure an $80 million line of credit; and was trying to sell SVSG's intellectual property rights as part of a "going private" transaction. Over SVSG's objections, Rocket Fuel consummated a "going private" transaction in September 2017.

14. Since January 2017, Rocket Fuel has continued to use SVSG's former engineering team based in Belarus to develop SVSG's source code without SVSG's authorization.

**Relevant Contracts**

15. Rocket Fuel. SVSG has never had a written contact with Rocket Fuel.

16. SVSG's Engineering Team. SVSG has always used written contracts to secure all rights and interests in and to the work product and intellectual property rights created by the software engineers it hires. When its work related to Rocket Fuel started in August 2014, SVSG had written agreements with each member of its engineering team in Belarus. The written agreements provided that SVSG would hire and pay the engineers for software development services and that each engineer (i) would keep SVSG's information strictly confidential, and (ii) assigned and transferred to SVSG all intellectual property rights and interests in the engineers' work.

17. In March 2015, SVSG fully funded the formation of a Belarusian entity—Sivintech LLC ("Sivintech")—that would directly employ most of SVSG's engineering team assigned to work on the Rocket Fuel project (one key engineer continued to be directly employed by SVSG). SVSG ensured that

each engineer signed employment and confidentiality agreements with Sivintech so that Sivintech would own all of the engineers' intellectual property rights and interests. SVSG then entered into a master services agreement with Sivintech that contained strict confidentiality provisions and that caused Sivintech to assign and transfer all of its intellectual property rights and interests to SVSG. The master services agreement also contained a non-solicitation provision designed to protect SVSG's intellectual property rights and confidential information.

18. Either from the engineers directly or through Sivintech, SVSG always had a written contract that secured for it all of the intellectual property rights and interests created by the engineers it hired to work on the Rocket Fuel project and that strictly maintained the confidentiality of the related information.

19. Lorem Labs. On August 1, 2014, SVSG and Lorem Labs entered into a written contract that anticipated that SVSG would provide software engineering services that would be passed on to Lorem Labs' clients. An annex to the contract provided that SVSG's engineers' work would be used by Rocket Fuel and that Lorem Labs would bill Rocket Fuel for SVSG's work and keep a small percentage of SVSG's engineering fees as a "placement fee." SVSG and Lorem Labs' contract and annex made clear that information passed between the parties would be kept confidential, and that SVSG was not assigning or transferring any intellectual property rights and interests to Lorem Labs. The terms of the contract and annex could only be modified in a writing signed by SVSG's and Lorem Labs' authorized representatives. The contract also contained a non-solicitation provision designed to protect SVSG's intellectual property rights and confidential information.

20. Form Assignment Agreements. After raising a dispute with Rocket Fuel in January 2017, SVSG learned that Rocket Fuel had, through Lorem Labs, approached SVSG's engineering team directly and asked SVSG's engineers to sign a one-page form assignment agreement stating, among other things, that the engineers' work constituted "work made for hire" for Lorem Labs, that the engineers were assigning and transferring all of their intellectual property rights to Lorem Labs, and that Rocket Fuel was a third-party beneficiary who could enforce the agreement against the engineers. SVSG did not know that Rocket Fuel had been seeking assignment agreements from SVSG's engineering team and never expressly or implicitly authorized its engineers to sign such agreements.

21. The form assignment agreements that Rocket Fuel obtained from SVSG's engineering team interfered with and were in direct conflict with the contractual obligations the engineers owed to SVSG (both when the engineers were directly employed by SVSG and when SVSG hired them indirectly through Sivintech). Moreover, the form assignment agreements were not supported by any consideration (neither Rocket Fuel nor Lorem Labs ever paid the engineers) and they improperly tried to invoke the works-made-for-hire doctrine (neither Rocket Fuel nor Lorem Labs ever hired the engineers until they poached the engineers in January 2017). In any event, the engineers had no intellectual property rights left to assign or transfer to Rocket Fuel under the form agreements because SVSG had already secured all such rights.

**Copyright Violations**

22. Rocket Fuel knew or should have known that SVSG hired its engineering team pursuant to written agreements that secured for SVSG all of the engineers' intellectual property rights and interests in the work product. Rocket Fuel also knew or should have known that the form assignment agreements it obtained from SVSG's engineers were invalid and unenforceable. Rocket Fuel has always known or should have known that SVSG owned all copyrights related to the source code SVSG's engineers created between 2014 and 2017.

23. Since January 2017, Rocket Fuel has continued to develop derivative works based on SVSG's source code without SVSG's authorization. Rocket Fuel's unauthorized derivative works include revisions, annotations, elaborations, and other modifications of SVSG's source code.

24. SVSG's source code created pursuant to SVSG's contract with Lorem Labs was authored by eight engineers working for SVSG in Belarus: Denis Bakunovitch, Alex Zherdev, Alex Litvinovsky, Arseni Buinitski, Dennis Sheleh, Vitaly Arzhanok, Mikhail Pobolovets, and Alex Randa. The engineers were under contract to and paid by SVSG directly from August 1, 2014 through March 2, 2015. Beginning March 2, 2015, the engineers worked indirectly for SVSG through Sivintech pursuant to a master services agreement between SVSG and Sivintech that ensured that SVSG at all times owned all of the source code the engineers created. The sole exception to this arrangement was engineer Denis Bakunovitch who never worked for Sivintech and who always worked directly for SVSG.

SODERSTROM LAW

25. SVSG's source code is human-readable language used by its engineers to program core components of Rocket Fuel's demand-side platform ("DSP"), i.e., technological features which allowed Rocket Fuel to upload ads and create and manage ad campaigns. The source code also created functionality that permitted users of the platform to target specific categories of viewers by being able to select and utilize various factors (including but not limited to age, location, gender, browser type, operating systems, and IP address) and to see variable metrics to better track the users' ad campaigns (including but not limited to number of ad views, types of interactions, and duration of interactions). Additionally, SVSG developed database schema for Rocket Fuel's DPS system, and developed the application programming interface utilized by Rocket Fuel's DSP, including the creation of Ruby libraries.

26. The source code constitutes written instructions authored by engineers that are designed to be executed by a computing device. The device will convert or compile the instructions into a binary "object code" consisting of 0s and 1s. The source code has two components: declaring code and implementing code. Each aspect of SVSG's source code is subject to copyright protection under the Copyright Act as a non-U.S. work. The source code is owned exclusively by SVSG and was authored by engineers in Belarus hired and paid by SVSG pursuant to written agreements. Each part of SVSG's source code contains declaring code and sets forth the structure, sequence, and organization of the relevant program.

27. SVSG's source code is original, was independently created by SVSG's engineers and not copied from other works, and possesses more than a minimal degree of creativity. It involves a particular expression of an idea, which expression used SVSG's source code as the literal elements of the computer program being created. It also involves non-literal components, including the sequence, structure, organization, and user interface of the relevant computer program. SVSG's source code constitutes an expression of an idea, not the idea itself, and the idea expressed by the source code is not one that can be expressed in only one way.

///

///

///

28. SVSG's engineers authored source code and related programming features from August 1, 2014 to January 27, 2017. Rocket Fuel continues to use most or all of SVSG's source code in its DSP, database schema, and application programming interface, and since January 27, 2017, Rocket Fuel has created unauthorized, non-transformative derivative works based on SVSG's source code.

**Misappropriation of Trade Secrets**

29. Misappropriation by Improper Use. Rocket Fuel's actions also constitute willful misappropriation of SVSG's trade secrets by improper use. SVSG's source code constitutes protected trade secret information. As the owner of the trade secrets, SVSG has the right to control the dissemination and use of its protected information.

30. SVSG's source code is information that derives independent economic value from not being known generally to the public or to other persons who can obtain economic value from its disclosure or use. SVSG undertook numerous and reasonable efforts to maintain the secrecy of its source code, including putting in place contractual requirements that maintained strict confidentiality over such information, and that any third parties to whom such information was given would likewise be subject to confidentiality agreements.

31. Specifically, SVSG's protectable source code and programming features were created pursuant to SVSG's contract with Lorem Labs from August 1, 2014 through January 27, 2017 by Belarusian engineers Denis Bakunovitch, Alex Zherdev, Alex Litvinovsky, Arseni Buinitski, Dennis Sheleh, Vitaly Arzhanok, Mikhail Pobolovets, and Alex Randa. None of these engineers ever worked for or was paid by Rocket Fuel or Lorem Labs until after January 27, 2017.

32. Rocket Fuel misused and continues to misuse SVSG's trade secrets by, among other things:

a. asserting that it, not SVSG, owns the intellectual property rights (including trade secret rights) attached to SVSG's source code and related work product;

b. disclosing in a Form 10-Q filed on May 9, 2017 with the U.S. Securities and Exchange Commission that it uses the intellectual property it owns (or in this case claims to own) to secure an $80.0 million line of credit;

SODERSTROM LAW

c.  amending the $80.0 million line of credit in February 2017 to extend the credit maturity date, further incumbering the intellectual property assets and representing to its creditors that it owns SVSG's source code and related work product that serves as part of the security exchanged for the credit;

d.  offering to sell SVSG's source code and related work product (including the unauthorized derivative works based thereon) as part of a corporate transaction announced on July 18, 2017 where Rocket Fuel would be acquired in a deal worth approximately $145 million; and

e.  actually selling SVSG's source code and related work product in September 2017 in a "going private" transaction.

33.  Rocket Fuel has unlawfully exploited SVSG's source code by (i) marketing and producing goods and services that embody or are comprised of SVSG's source code, (ii) relying on SVSG's trade secrets to assist and accelerate its own research and development efforts after January 27, 2017 that would be exponentially more difficult if it did not rely on the source code SVSG created from August 1, 2014 to January 27, 2017, and the same engineers that created the source code; and (iii) soliciting customers (including customers looking to purchase Rocket Fuel in its entirety) by using SVSG's source code as one of the assets to be sold in the "going private" transaction. Each of Rocket Fuel's actions constitutes misappropriation of SVSG's trade secret information by improper use.

34.  <u>Misappropriation by Improper Acquisition</u>. Rocket Fuel further misappropriated SVSG's trade secrets when it poached SVSG's engineering team in Belarus and, in doing so, acquired by improper means the interpretive information that constitutes the key to reading and understanding SVSG's source code without having to reverse engineer or decode it. The interpretative information known by SVSG's engineers with respect to SVSG's source code was not simply general coding know-how that is known generally by all software engineers; rather, it is the key that enables the source code to continue to be developed without having to spend substantial time and resources to reverse engineer or decode the source code that already existed.

35.  Rocket Fuel knew that the source code constituted a computer-readable language that derived independent economic value from not being generally known to the public or to other persons



who can obtain economic value from its disclosure or use. SVSG's engineers did not simply create source code that could easily and immediately be replicated or developed further by any competent software engineer. Rocket Fuel also knew that SVSG took reasonable efforts to maintain the secrecy of such information by hiring its engineering team pursuant to written agreements, subjecting the engineering team to strict confidentiality requirements, and requiring that confidentiality agreements be put in place whenever SVSG's engineering team disclosed their work product to third parties (including to Rocket Fuel).

36. Rocket Fuel also knew that losing SVSG's engineering team on the project would require Rocket Fuel to hire new engineers who would then have to reverse engineer and/or independently derive the information included in SVSG's source code in order to continue to develop the source code. Rocket Fuel understood that doing so would be very expensive because SVSG's engineering team had worked over 37,000 hours on the project and any new engineers that Rocket Fuel hired would have to spend substantial time interpreting SVSG's existing source code before they could begin to build on what SVSG's engineering team had already created.

37. Rocket Fuel chose to avoid the risk and expense of finding new engineers who could build on SVSG's work and simply acquired SVSG's trade secret information unlawfully by paying to have SVSG's engineering team stop working with SVSG, breach their confidentiality and non-solicitation obligations owed to SVSG, and disclose and use their knowledge of the interpretive information without SVSG's authorization. Rocket Fuel knew it was acquiring SVSG's interpretive information by improper means and in violation of the engineers' confidentiality obligations owed to SVSG.

38. Rocket Fuel's improper use and improper acquisition of SVSG's trade secrets reduces the value of the trade secrets to SVSG and has caused SVSG to suffer substantial and ongoing harm.

**Interference with SVSG's Contracts and Prospective Economic Advantage**

39. Rocket Fuel interfered with SVSG's contracts with its engineering team and with SVSG's prospective economic advantage related to its engineering team.

///

///

40. Rocket Fuel knew or should have known that SVSG had written contracts with its engineering team in Belarus that secured for SVSG all of the intellectual property rights and interests related to the engineers' work product. Rocket Fuel also knew or should have known that SVSG did not assign or transfer any intellectual property rights to Lorem Labs pursuant to the contract between SVSG and Lorem Labs. Nevertheless, Rocket Fuel had SVSG's engineers execute form assignment agreements in an attempt to secure all of the engineers' intellectual property rights and interests for Rocket Fuel. Rocket Fuel took such actions without SVSG's knowledge or authorization. Rocket Fuel's actions interfered with and caused SVSG's engineering team to breach their contracts with SVSG.

41. Rocket Fuel also interfered with and caused SVSG's engineering team to breach their contracts with SVSG when Rocket Fuel (or Lorem Labs with Rocket Fuel's encouragement) convinced the engineer team to stop working with SVSG and continue working on the same project without SVSG. To do so, SVSG's engineering team and Lorem Labs had to breach confidentiality and non-solicitation obligations owned to SVSG and disclose protected trade secret information and other confidential information to Rocket Fuel.

42. Rocket Fuel's actions also interfered with the future economic benefits that SVSG reasonably expected to receive from its long-standing relationships with its engineering team. SVSG spent many years and substantial resources forming its Belarus-based engineering team, including finding and hiring the engineers directly and eventually fully funding the formation of a Belarusian company—Sivintech—that was designed specifically to employ SVSG's engineering team and maintain an ongoing business relationship while ensuring compliance with relevant Belarusian law. SVSG heavily invested in its relationship with its Belarus-based engineering team and reasonably expected to continue working with the same engineering team for many years to come.

43. Rocket Fuel's knew or should have known about SVSG's contracts and long-standing relationships with Lorem Labs and with its engineering team, and Rocket Fuel intentionally interfered with SVSG's ability to secure future economic benefits from such contracts and relationships.

///

///

///

SODERSTROM LAW

**CAUSES OF ACTION**

**Count One**

**Copyright Infringement**

**Copyright Act, 17 U.S.C. § 101 *et seq.***

44. SVSG incorporates by reference each of the foregoing paragraphs.

45. SVSG's source code created by its engineering team between August 1, 2014 and January 27, 2017 is fixed in a tangible medium and constitutes an original work. SVSG's source code is entitled to copyright protection under the Copyright Act, 17 U.S.C. § 101 *et seq*.

46. SVSG hired software engineers in Belarus to create the source code pursuant to written contracts that assigned and transferred exclusive ownership of the source code and intellectual property rights attached thereto to SVSG. The source code is not a "United States work" within the meaning of 17 U.S.C. §§ 101 and 411(a), and therefore no copyright registration is required to bring or maintain this cause of action for copyright infringement based on Rocket Fuel's unauthorized derivative works that are based on SVSG's source code.

47. SVSG is the exclusive owner of the source code created by its engineering team in Belarus and is entitled to bring and maintain a claim for copyright infringement.

48. In violation of SVSG's copyright in the source code, Rocket Fuel has created and used unauthorized derivative works that are based substantially or entirely on SVSG's source code. Rocket Fuel's derivative works include editorial revisions, annotations, elaborations, and other modifications of SVSG's source code for incorporation and use in Rocket Fuel's DSP and related programming features. Rocket Fuel has infringed and continues to infringe on SVSG's copyright in the source code in violation of 17 U.S.C. §§ 106 and 501.

49. Rocket Fuel's actions constituting copyright infringement in SVSG's source code were and continue to be willful.

50. SVSG has suffered damages as a direct and proximate result of Rocket Fuel's infringement of SVSG's copyright.

51. SVSG is entitled to declaratory relief confirming that SVSG is the exclusive owner of the source code copyright; injunctive relief under 17 U.S.C. § 502 to prevent and restrain Rocket Fuel's

further infringement of SVSG's copyright; SVSG's actual damages and Rocket Fuel's profits attributable to the infringement under 17 U.S.C. § 504, each in an amount to be proven at trial; and SVSG's costs and attorneys' fees.

**Count Two**

**Misappropriation of Trade Secrets by Improper Use**

**California Uniform Trade Secrets Act, Cal. Civ. Code § 3426 *et seq.***

52. SVSG incorporates by reference each of the foregoing paragraphs.

53. SVSG's source code and related programming features created by SVSG's engineering team in Belarus between August 1, 2014 and January 27, 2017 constitutes confidential and trade secret information as defined by California's Uniform Trade Secrets Act, California Civil Code § 3426 *et seq.* ("CUTSA").

54. The source code is information owned by SVSG that derives independent actual or potential economic value from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, and that has been the subject of efforts by SVSG that are reasonable under the circumstances to maintain its secrecy.

55. Rocket Fuel is a "person" under section 3426.1 of the CUTSA.

56. Rocket Fuel knew or had reason to know that its knowledge of SVSG's source code was acquired under circumstances giving rise to a duty to maintain its secrecy and limit its use, and Rocket Fuel has willfully used SVSG's source code beyond the permissible uses without SVSG's express or implied consent. Rocket Fuel's improper uses include, but are not limited to, publicly and privately asserting ownership over SVSG's source code, using SVSG's source code as security for purposes of obtaining a line of credit, and using the source code as an asset to solicit potential investors in and/or purchasers of Rocket Fuel.

57. Rocket Fuel's misappropriation by improper use of SVSG's source code has reduced the value of the source code to SVSG and has caused SVSG substantial harm.

58. Rocket Fuel's misappropriation was willful and malicious.

///

///

SODERSTROM LAW

59. SVSG is entitled under the CUTSA to declaratory relief confirming that SVSG is the exclusive owner of the source code its engineering team created and that the source code constitutes protectable trade secret information; injunctive relief that prevents Rocket Fuel's further misappropriation and misuse of SVSG's trade secret information, eliminates Rocket Fuel's commercial advantage that otherwise would be derived from its misappropriation, or requires Rocket Fuel to pay a reasonable royalty to SVSG; actual damages and restitution, each in an amount to be proven at trial and equal to the amount caused by Rocket Fuel's misappropriation and to prevent unjust enrichment; exemplary damages of twice the amount of SVSG's actual damages and restitution; and SVSG's costs and attorneys' fees.

**Count Three**

**Misappropriation of Trade Secrets by Improper Acquisition**

**California Uniform Trade Secrets Act, Cal. Civ. Code § 3426 *et seq.***

60. SVSG incorporates by reference each of the foregoing paragraphs.

61. The information necessary to interpret the source code and related programming features created by SVSG's engineering team in Belarus between August 1, 2014 and January 27, 2017 constitutes confidential and trade secret information as defined by the CUTSA.

62. The interpretive information—essentially, the "key" to easily decode and understand the source code created by SVSG's engineers without reverse engineering or independent derivation—derives independent actual or potential economic value from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use. This information has also been the subject of efforts by SVSG that are reasonable under the circumstances to maintain its secrecy.

63. Rocket Fuel is a "person" under section 3426.1 of the CUTSA.

64. Rocket Fuel knew or had reason to know that, by causing SVSG's engineering team to stop working with SVSG and work with Rocket Fuel to continue developing the same source code, it was acquiring by improper means the interpretive information known only to SVSG and its engineering team. The improper means include but are not limited to causing SVSG's engineering team to breach their contracts with and their confidentiality obligations owed to SVSG.

SODERSTROM LAW

65. Rocket Fuel's misappropriation of SVSG's interpretive information related to its source code has reduced the information's value to SVSG and has caused SVSG substantial harm.

66. Rocket Fuel's misappropriation was willful and malicious.

67. SVSG is entitled under the CUTSA to declaratory relief that the interpretive information constitutes protectable trade secret information; injunctive relief that prevents Rocket Fuel's further misappropriation and misuse of SVSG's trade secret information, eliminates Rocket Fuel's commercial advantage that otherwise would be derived from its misappropriation, or requires Rocket Fuel to pay a reasonable royalty to SVSG; actual damages and restitution, each in an amount to be proven at trial and equal to the amount caused by Rocket Fuel's misappropriation and to prevent unjust enrichment; exemplary damages of twice the amount of SVSG's actual damages and restitution; and SVSG's costs and attorneys' fees.

## Count Four

### Misappropriation of Trade Secrets by Improper Use

### Defend Trade Secrets Act, 18 U.S.C. 1836 *et seq.*

68. SVSG incorporates by reference each of the foregoing paragraphs.

69. SVSG is the owner of the source code created between August 1, 2014 and January 27, 2017 by its engineering team in Belarus.

70. SVSG's source code and related programming features created by SVSG's engineering team in Belarus between August 1, 2014 and January 27, 2017 constitutes confidential and trade secret information under the DTSA.

71. SVSG's source code is related to a product or service used in, or intended for use in, interstate or foreign commerce. Specifically, SVSG's source code was and continues to be used in Rocket Fuel's DSP, i.e., technological features which allowed Rocket Fuel to upload ads and create and manage ad campaigns on the Internet for customers nationwide and worldwide.

72. The source code is information owned by SVSG that derives independent actual or potential economic value from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, and that has been the subject of efforts by SVSG that are reasonable under the circumstances to maintain its secrecy.

73. Rocket Fuel knew or had reason to know that its knowledge of SVSG's source code was acquired under circumstances giving rise to a duty to maintain its secrecy and limit its use, and Rocket Fuel has willfully used SVSG's source code beyond the permissible uses without SVSG's express or implied consent. Rocket Fuel's improper uses include, but are not limited to, publicly and privately asserting ownership over SVSG's source code, using SVSG's source code as security for purposes of obtaining a line of credit, and using the source code as an asset to solicit potential investors in and/or purchasers of Rocket Fuel.

74. Rocket Fuel's misappropriation by improper use of SVSG's source code has reduced the value of the source code to SVSG and has caused SVSG substantial harm.

75. Rocket Fuel's misappropriation was willful and malicious.

76. To the extent that Rocket Fuel's wrongful conduct occurred and is continuing to occur outside of the United States (e.g., in Belarus where the engineers are located), the DTSA applies because Rocket Fuel is an organization organized under the laws of California and Rocket Fuel has committed an act in furtherance of its offenses within the United States. 18 U.S.C. § 1837.

77. SVSG is entitled under the DTSA to declaratory relief that the interpretive information constitutes protectable trade secret information; injunctive relief that prevents Rocket Fuel's further misappropriation and misuse of SVSG's trade secret information, eliminates Rocket Fuel's commercial advantage that otherwise would be derived from its misappropriation, or requires Rocket Fuel to pay a reasonable royalty to SVSG; actual damages, restitution, and/or a reasonable royalty, each in an amount to be proven at trial and equal to the amount caused by Rocket Fuel's misappropriation and to prevent unjust enrichment; exemplary damages of twice the amount of SVSG's actual damages and restitution; and SVSG's costs and attorneys' fees.

**<u>Count Five</u>**

**Misappropriation of Trade Secrets by Improper Acquisition**

**Defend Trade Secrets Act, 18 U.S.C. 1836 *et seq.***

78. SVSG incorporates by reference each of the foregoing paragraphs.

///

///

79. The information necessary to interpret the source code and related programming features created by SVSG's engineering team in Belarus between August 1, 2014 and January 27, 2017 constitutes confidential and trade secret information under the DTSA.

80. The interpretive information—essentially, the "key" to easily decode and understand the source code created by SVSG's engineers without reverse engineering or independent derivation—derives independent actual or potential economic value from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use. This information has also been the subject of efforts by SVSG that are reasonable under the circumstances to maintain its secrecy.

81. SVSG's interpretive information is related to a product or service used in, or intended for use in, interstate or foreign commerce. Specifically, SVSG's source code was and continues to be used in Rocket Fuel's DSP, i.e., technological features which allowed Rocket Fuel to upload ads and create and manage ad campaigns on the Internet for customers nationwide and worldwide.

82. Rocket Fuel knew or had reason to know that, by causing SVSG's engineering team to stop working with SVSG and work with Rocket Fuel to continue developing the same source code, it was acquiring by improper means the interpretive information known only to SVSG and its engineering team. The improper means include but are not limited to causing SVSG's engineering team to breach the contracts with and the confidentiality obligations owed to SVSG.

83. Rocket Fuel's misappropriation of SVSG's interpretive information related to its source code has reduced the information's value to SVSG and has caused SVSG substantial harm.

84. Rocket Fuel's misappropriation was willful and malicious.

85. To the extent that Rocket Fuel's wrongful conduct occurred and is continuing to occur outside of the United States (e.g., in Belarus where the engineers are located), the DTSA applies because Rocket Fuel is an organization organized under the laws of California and Rocket Fuel has committed an act in furtherance of its offenses within the United States. 18 U.S.C. § 1837.

86. SVSG is entitled under the DTSA to declaratory relief that the interpretive information constitutes protectable trade secret information; injunctive relief that prevents Rocket Fuel's further misappropriation and misuse of SVSG's trade secret information, eliminates Rocket Fuel's commercial advantage that otherwise would be derived from its misappropriation, or requires Rocket Fuel to pay a

SODERSTROM LAW

reasonable royalty to SVSG; actual damages, restitution, and/or a reasonable royalty, each in an amount to be proven at trial and equal to the amount caused by Rocket Fuel's misappropriation and to prevent unjust enrichment; exemplary damages of twice the amount of SVSG's actual damages and restitution; and SVSG's costs and attorneys' fees.

**Count Six**

**Inducing Breach of Contract**

87. SVSG incorporates by reference each of the foregoing paragraphs.

88. SVSG had valid and enforceable contracts with its engineers, with Sivintech, and with Lorem Labs.

89. Rocket Fuel knew or should have known about SVSG's contracts.

90. Rocket Fuel took actions intending to cause the engineers, Sivintech, and Lorem Labs to breach their contracts with SVSG.

91. Rocket Fuel's actions included (i) causing SVSG's engineers to sign form assignment agreements purporting to assign and transfer the intellectual property rights in their work product that SVSG had already secured to Rocket Fuel, (ii) causing Sivintech to breach its contract with SVSG and stop working with SVSG, (iii) causing the engineers and Sivintech to disclose SVSG's confidential information without SVSG's authorization, and (iv) causing Sivintech and Lorem Labs to breach the non-solicitation provisions in their respective contracts.

92. Rocket Fuel's actions caused SVSG's engineers, Sivintech, and Lorem Labs to breach their contracts with SVSG. Rocket Fuel's action also caused and continues to cause SVSG to suffer substantial harm.

93. SVSG is entitled to recover general and special damages as compensation for its harm, as well as punitive damages because Rocket Fuel's actions were reprehensible and the product of oppression, fraud, and malice.

**Count Seven**

**Intentional Interference with Contractual Relations**

94. SVSG incorporates by reference each of the foregoing paragraphs.

95. SVSG had valid and enforceable contracts with its engineers, with Sivintech, and with Lorem Labs.

96. Rocket Fuel knew or should have known about SVSG's contracts.

97. Rocket Fuel intentionally interfered with SVSG's contracts by (i) causing SVSG's engineers to sign form assignment agreements, (ii) causing SVSG's engineers to disclose SVSG's confidential information, (iii) causing SVSG's engineers and Sivintech to stop performance of their contracts with SVSG but continue working on SVSG's source code without SVSG's authorization, and (iv) causing Sivintech and Lorem Labs to breach the non-solicitation provisions in their respective contracts.

98. Rocket Fuel's actions were intended to and actually did disrupt and interfere with the performance of the contracts, and Rocket Fuel's actions made it more difficult to perform the contracts and eventually prevented the performance of the contracts completely.

99. Rocket Fuel's actions caused and continues to cause SVSG to suffer substantial harm.

100. SVSG is entitled to recover general and special damages as compensation for its harm, as well as punitive damages because Rocket Fuel's actions were reprehensible and the product of oppression, fraud, and malice.

**<u>Count Eight</u>**

**Intentional Interference with Prospective Economic Advantage**

101. SVSG incorporates by reference each of the foregoing paragraphs.

102. SVSG had a long-standing economic relationship with Sivintech and the engineering team it placed at Sivintech.

103. Rocket Fuel knew or should have known of the existence of SVSG's relationship with its engineering team and with Sivintech.

104. Rocket Fuel took intentional actions that were designed to disrupt SVSG's relationship with its engineering team. Rocket Fuel's actions included but were not limited to causing the engineering team and Sivintech to stop working with SVSG.

///

///

105. Rocket Fuel's actions actually disrupted SVSG's relationship with its engineering team and Sivintech. SVSG's relationship with its engineering team and Sivintech probably would have continued and resulted in substantial future economic benefits to SVSG.

106. Rocket Fuel's actions caused and continues to cause SVSG to suffer substantial harm.

107. SVSG is entitled to recover general and special damages as compensation for its harm, as well as punitive damages because Rocket Fuel's actions were reprehensible and the product of oppression, fraud, and malice.

**Count Nine**

**Negligent Interference with Prospective Economic Advantage**

108. SVSG incorporates by reference each of the foregoing paragraphs.

109. SVSG had a long-standing economic relationship with Sivintech and the engineering team it placed at Sivintech.

110. Rocket Fuel knew or should have known of the existence of SVSG's long-standing economic relationship with its engineers and with Sivintech.

111. Rocket Fuel negligently interfered with SVSG's relationship with its engineering team and Sivintech. SVSG's relationship with its engineering team and Sivintech probably would have resulted in substantial future economic benefit to SVSG. Rocket Fuel knew or should have known that SVSG's relationship with its engineering team and Sivintech would be disrupted if it failed to act with reasonable care.

112. Rocket Fuel had a duty to act with reasonable care.

113. Rocket Fuel failed to act with reasonable care and instead caused SVSG's engineering team and Sivintech to breach their contractual obligations owed to SVSG, disclose SVSG's confidential information, and stop working with SVSG.

114. Rocket Fuel's actions caused and continues to cause SVSG to suffer substantial harm. Rocket Fuel's actions were a substantial factor in causing SVSG's harm.

115. SVSG is entitled to recover general and special damages as compensation for its harm.

///

///

SODERSTROM LAW

**Count Ten**

**Unfair Competition**

**Cal. Bus. & Prof. Code § 17200 *et seq.***

116. SVSG incorporates by reference each of the foregoing paragraphs.

117. California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL"), prohibits unfair competition, including unlawful, unfair, and fraudulent business acts and practices.

118. Rocket Fuel's actions are unlawful under the laws described above and are therefore also unlawful under the UCL except to the extent the UCL is preempted by such laws.

119. Rocket Fuel's actions constituting inducing breach of contract, intentional interference with contractual relations, intentional interference with prospective economic advantage, and negligent interference with prospective economic advantage are unlawful under the UCL.

120. Rocket Fuel's actions, even if not unlawful under the laws described above, still constitute unfair business acts and practices and are independently unlawful under the UCL.

121. Rocket Fuel's actions taken in violation of the UCL caused and continues to cause SVSG to suffer substantial harm.

122. SVSG is entitled injunctive relief that prevents Rocket Fuel's unlawful and unfair conduct and eliminates Rocket Fuel's unfair commercial advantage; and restitution and disgorgement in the amounts necessary to make SVSG whole and to prevent unjust enrichment. SVSG also is entitled to its costs and attorneys' fees under Cal. Code Civ. Proc. § 1021.5.

**PRAYER FOR RELIEF**

WHEREFORE, SVSG prays for the following relief:

A. Declaratory relief that confirms that SVSG is the exclusive owner of its engineering team's work product, including the source code and all intellectual property rights and interests attached thereto;

B. Injunctive relief that remedies Rocket Fuel's willful copyright infringement and misappropriation of trade secrets by improper use and improper acquisition, including but not limited to an order enjoining Rocket Fuel from continuing to develop and use SVSG's source code and from continuing to work with the same engineers in Belarus on

the same project;

C. An award of all actual damages, general and special damages, and exemplary and punitive damages in amounts to be proven at trial;

D. Restitution, disgorgement, and/or a reasonable royalty;

E. Pre-judgment and post-judgment interest as allowed by law;

F. Reasonable attorneys' fees and costs; and

G. Such additional and further relief as this Court may deem just and proper.

Dated: February 2, 2018

SODERSTROM LAW PC

By: */s/ Jamin S. Soderstrom*

*Counsel for Silicon Valley Software Group, LLC*

E-mail: jamin@soderstromlawfirm.com

**JURY TRIAL DEMANDED**

SVSG demands a trial by jury of all issues triable by jury.

Dated: February 2, 2018

SODERSTROM LAW PC

By: */s/ Jamin S. Soderstrom*

*Counsel for Silicon Valley Software Group, LLC*

E-mail: jamin@soderstromlawfirm.com